IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02573-KLM

THE ESTATE OF DENNY LOVERN,
by and through its personal representative Darla Dailey, and
DARLA DAILEY, individually,

    Plaintiffs,

v.

CORRECT CARE SOLUTIONS, LLC,
BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF ARAPAHOE, COLORADO,
TYLER BROWN, in his official capacity as Arapahoe County Sheriff,
JENNA WALTER, RN, individually,
HEIDI LANTZ, LPN, individually,
CHERYL THOMPSON, RN, individually, and
RON WAITS, NP individually,

    Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants Board of County Commissioners for the County of Arapahoe, Colorado, and Tyler Brown's[1] (collectively the "County Defendants") **Motion to Dismiss Plaintiffs' Complaint** [#26][2] (the "Motion"). Plaintiffs

---

[1] The Motion [#26] was initially filed by the former Arapahoe County Sheriff, David Walcher. Pursuant to Defendants' Notice of Substitution of Party [#34] and Fed. R. Civ. P. 25(d), Tyler Brown has been substituted in place of David Walcher in his official capacity in this action as the current Arapahoe County Sheriff. *See Minute Order* [#36].

[2] "[#26]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

timely filed a Response [#33] in opposition to the Motion [#26], and Defendants filed a Reply [#39]. The Court has reviewed the Motion [#26], the Response [#33], the Reply [#39], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#26] is **DENIED**.

## I. Background[3]

In the Motion [#26], the County Defendants assert that Plaintiffs' First Amended Complaint [#49] fails to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). *Motion* [#26] at 1. This action arises out of the death of Denny Lovern ("Lovern"), who died on April 8, 2017, at the Arapahoe County Detention Facility ("ACDF") as a result of a heart attack at the age of 59. *First Am. Compl.* [#49] at ¶¶ 1-2. Medical care at ACDF was provided by Defendant Correct Care Solutions ("CCS") pursuant to a contract with Arapahoe County. *Id.* at ¶ 15.

The relevant factual allegations contained in Plaintiff's First Amended Complaint [#49][4] are summarized as follows. Mr. Lovern's incarceration at ACDF began on April 3, 2017. *Id.* at ¶ 23. Mr. Lovern "had an extensive medical history of cardiac-related conditions, including previous heart attacks and stent-placement surgery," conditions for which Mr. Lovern was prescribed Plavix, "a critically important drug for patients with heart problems." *Id.* at ¶¶ 24, 28. Plaintifs allege that "Mr. Lovern was not administered his

---

[3] The Court summarizes the factual allegations only to the extent necessary to adjudicate the present Motion [#26].

[4] The Motion [#26] was filed in response to Plaintiffs' initial Complaint [#1]. On May 2, 2019, the Court granted Plaintiffs' Second Motion to Amend their Complaint [#48]. In that Order, the Court also denied the present Motion [#26] as moot. On May 20, 2019, the County Defendants filed the Unopposed Motion to Renew Motion to Dismiss [#55], which the Court granted in light of the County Defendants' representation that the changes in the First Amended Complaint did not pertain to the claim against them and given that Plaintiffs did not oppose the request. *See Minute Order* [#57].

prescribed Plavix for several days . . . because ACDF did not have or promptly secure his necessary prescribed medication." *Id.* at ¶ 31. Mr. Lovern first began experiencing chest pain on the evening of April 6, 2017, and reported to a CCS nurse that he felt as though he might be having a heart attack. *Id.* at ¶¶ 40-43. However, no CCS nurse called a doctor or further reported Mr. Lovern's concern that he might be having a heart attack, and instead diagnosed Mr. Lovern with esophageal problems. *Id.* at ¶¶ 49, 50, 55, 62. On April 7, 2017, a CCS nurse provided Mr. Lovern with his first dose of Plavix since the start of his incarceration. *Id.* at ¶ 77. However, she did not take his vitals or administer an EKG test, despite Mr. Lovern's continued complaints of abdominal pain and regular vomiting of bile, dismissing his symptoms as those of "just normal heartburn." *Id.* at ¶¶ 79, 81-82, 86. Around 1:45 a.m. on April 8, 2017, Mr. Lovern's cellmate reported to ACDF deputies that Mr. Lovern had collapsed on the toilet. *Id.* at ¶ 89. Responding deputies "found Mr. Lovern unresponsive, not breathing, and without a pulse" in his cell, where he died. *Id.* at ¶ 91-92.

Plaintiffs assert that "CCS controls all aspects of health care available to inmates" and maintains "unconstitutional policies, customs and training" in violation of the Eighth and Fourteenth Amendments. *Id.* at ¶ 95. Such alleged policies, customs, and training include:

> (1) a written contractual policy of deliberately indifferent low staffing and under-budgeting inmate medical care; (2) under-stocking or not timely securing inmates' necessary prescription medications; (3) a custom of disregarding inmates' medical complaints as faked or exaggerated without ruling out serious medical conditions that could lead to substantial injury or death, and training regarding the same; (4) allowing nurses and EMTs to practice outside their licensure scope rather than having inmates be seen by higher level medical providers in part to save money; and (5) a widespread custom of disregarding or ignoring serious medical conditions.

*Id.* Plaintiffs further allege "an affirmative causal link between the deliberate indifference of the individual health care workers towards Mr. Lovern's medical needs and the policies,

-3-

practices, customs, and training" described in their First Amended Complaint. *Id.* at ¶ 166. Accordingly, Plaintiffs assert their Second Claim for Relief against both CCS and the County Defendants. *Id.* at ¶¶ 163, 169-70. Because the County Defendants contracted with CCS to provide medical services to inmates at ACDF, *see id.* at ¶ 162, Plaintiffs seek to hold the County Defendants "non-delegably liable for the constitutional violations of the CCS Defendant" through the doctrine set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 163. The County Defendants seek to dismiss only the *Monell* claim pursuant to this Motion [#26].

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's

allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief" as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (first alteration in original) (citation and internal quotation omitted).

### III. Analysis

*Monell* holds that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694.

In the Motion [#26], the County Defendants argue that Plaintiffs' claim against them fails as a matter of law because it improperly seeks to hold the County Defendants vicariously liable for alleged constitutional deficiencies of CCS and because the claim fails

to meet the requirements of *Monell*. [#26] at 5, 9. In their Response, Plaintiffs state that they have not sued the County Defendants "directly or under vicarious liability, *respondeat superior*, or any other disallowed theory of §1983 governmental liability." [#33] at 3. Rather, Plaintiffs clarify that they bring their claim against the County Defendants "under the well-established non-delegable duty doctrine," alleging that the County Defendants "are liable, regardless of their direct role, for CCS's unconstitutional policies, customs, and training." *Id.* In light of Plaintiff's more narrow theory of indirect liability, the County Defendants counter with two arguments in their Reply [#39]. First, the County Defendants argue that the Court should not accept the non-delegable duty doctrine's theory of liability because "it is not well established, has been characterized by some courts as improper vicarious liability, and has not been recognized by the Tenth Circuit." Reply [#39] at 3. Second, the County Defendants argue that, even if the Court does accept the non-delegable duty doctrine as a viable theory of liability, the Court "should not contravene *Monell* by ignoring whether the County had the requisite culpable mental state" and instead "should require Plaintiffs to plausibly allege deliberate indifference by the County as many courts recognizing the non-delegable duty theory do." *Id.* at 8. The Court addresses each of the County Defendants' arguments in turn.

**A.     Recognition of the Non-Delegable Duty Doctrine in the District of Colorado**

It is well-settled that the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Further, the government's obligation to provide adequate medical care is non-delegable, as set forth in the Supreme Court's decision in *West v. Atkins*, 487 U.S. 42 (1988). In *West*, the Court determined that "[c]ontracting out prison medical care does not relieve the

State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." 487 U.S. at 56 (holding that where the State delegated provision of inmate medical care to a private physician, the physician acted under color of state law, and actions of the physician could be attributed to the State).

As an initial matter, the Court finds the County Defendants' argument unpersuasive to the extent they assert that the non-delegable duty doctrine should be characterized as "improper vicarious liability." *Reply* [#39] at 3. The County Defendants fail to cite any authority from within the Tenth Circuit as support for this contention, and apparently ignore the clear differences drawn between liability under the non-delegable duty doctrine and liability under *respondeat superior* within this District. *McGill v. Corr. Healthcare Cos.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 5423271 (D. Colo. Oct. 24, 2014), clarifies the distinction between the two theories:

> [Plaintiff] does not rely on a theory of *respondeat superior* liability, which would render the County automatically liable for the acts of its employees regardless of the existence of an unconstitutional policy, custom, or practice . . . . Instead, the plaintiff claims that [the healthcare contractor] provided constitutionally inadequate training to its nurses that directly resulted in the nursing staff's failure to call a doctor or an ambulance when [plaintiff] presented with signs of a stroke. This alleges a policy, practice, or custom of [the contractor], which may be attributed to the County through the non-delegable duty doctrine.

2014 WL 5423271, at *7. The Court therefore determines that the two theories of liability are distinct, and liability under the non-delegable duty doctrine does not amount to improper vicarious liability.

The Tenth Circuit Court of Appeals has not yet formally adopted the non-delegable duty doctrine. Nonetheless, to the extent that the County Defendants claim the doctrine

is not well-established and should not be applied here, the Court disagrees. The non-delegable duty doctrine has been applied several times in this District very recently, with the court in each case finding that the doctrine provides a viable theory of indirect liability against a municipality in circumstances similar to those found here. *See, e.g.*, *Estate of Walter v. Corr. Healthcare Cos.*, 323 F. Supp. 3d 1199, 1215-16 (D. Colo. 2018) (determining that "the doctrine is correct, at least where, as here, the government delegates final policymaking authority to the third party"); *Trujillo v. City & Cty. of Denver*, No. 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *16 (D. Colo. Sept. 7, 2016) (finding that "policies [of the healthcare contractor] can be imputed to the City and County of Denver because of its delegation of health care services to [the healthcare contractor]."); *McGill*, 2014 WL 5423271, at *6-7 (D. Colo. Oct. 24, 2014) (applying doctrine to find that county could be liable for inadequate training provided by private healthcare contractor). Moreover, application of the non-delegable duty doctrine within this District aligns with the decisions of several circuit courts. *See, e.g.*, *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services . . . . The underlying rationale is not based on *respondeat superior*, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it."); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) (The county "retains responsibility [for inmates' medical care] despite having contracted out the medical care of its prisoners."); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("[T]he mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment.") (citing *West*, 487 U.S. at 56); *Ancata v.*

*Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("This duty [to provide medical care to inmates] is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable.").

In arguing that the Court should decline to extend the non-delegable duty doctrine to the present case, the County Defendants rely on two Sixth Circuit decisions, *Medley v. Shelby Cty.*, 742 F. App'x 958 (6th Cir. 2018), and *Graham v. Cty. of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), for their assertion that the "Sixth Circuit implicitly rejected the indirect liability Plaintiffs seek to impose here." *Reply* [#39] at 4. However, the questions addressed by the Sixth Circuit in both of those cases are distinguishable from the present case because neither involved the non-delegable duty doctrine at all. In *Medley* and *Graham*, the plaintiffs in each case sought to hold the respective counties liable for alleged violations of the right to adequate medical care while in custody. In both cases, the counties had contracted with third party healthcare contractors to provide medical care at the county jails. *Medley*, 742 F. App'x at 962; *Graham*, 358 F.3d at 382. In each case, the Sixth Circuit correctly determined that the plaintiffs had to prove the existence of an unconstitutional policy attributable to the county which caused the alleged constitutional violations. *Medley*, 742 F. App'x at 962; *Graham*, 358 F.3d at 383. However, the plaintiffs in both cases alleged that the unconstitutional policies attributable to the counties were the actual contracts between the counties and the healthcare contractors, rather than policies of the healthcare contractors which could be imputed to the counties based on the

delegation of final policymaking authority. *Medley*, 742 F. App'x at 962; *Graham*, 358 F.3d at 382. Thus, the Sixth Circuit had no need to reach the issue of the non-delegable duty doctrine because the plaintiffs in each case did not allege any unconstitutional policies that could be attributed to the counties. Therefore, the Court rejects the County Defendants' argument that the Sixth Circuit "implicitly rejected" the non-delegable duty doctrine. *Reply* [#39] at 4.

Notably, neither *Medley* nor *Graham* discusses the earlier Sixth Circuit decision of *Leach*, where the county, claiming to rely on the judgment of jail medical staff, was not excused from liability after having contracted out the medical care of its prisoners to a healthcare contractor. 891 F.2d at 1250. This further persuades the Court that the Sixth Circuit in *Medley* and *Graham* analyzed a different issue from that in *Leach* and the one presently before this Court. Here, Plaintiffs seek to hold the County Defendants liable for specific alleged unconstitutional policies promulgated by CCS pursuant to the final policymaking authority delegated to it by Arapahoe County, rather than asserting that the contract between the County and CCS is itself unconstitutional. Thus, *Medley* and *Graham* bear little relevance to the present matter, and the Court finds that the weight of authority in this District and courts of appeals outside the Tenth Circuit favors recognition and application of the non-delegable duty doctrine in this case.

**B.     Requirement of Deliberate Indifference by the County**

The County Defendants next contend that "[c]ourts recognizing the non-delegable theory of liability typically require a showing of deliberate indifference *by the county*." *Reply* [#39] at 5 (emphasis in original). Plaintiffs disagree and assert that application of the non-delegable duty doctrine turns on the municipality's delegation of final policymaking authority

to the healthcare contractor, whose policies may then be attributed to the municipality for purposes of liability. *See Response* [#33] at 9.

The Court finds the most recent application of the doctrine within this District particularly instructive on this issue. In *Estate of Walter*, the county argued, as the County Defendants do here, that to be held liable under the non-delegable duty doctrine, the plaintiff estate had to show that the "[c]ounty was on notice, prior to [the decedent detainee]'s death, that any policies or procedures of [the healthcare contractor] were causing problems of the sort alleged [by the plaintiff estate]." 323 F. Supp. 3d at 1215. District Judge Martinez, relying on *King*, rejected this argument, finding that "the question is not whether the County itself promulgated an unconstitutional policy or had notice of problems caused by [the healthcare contractor]'s policy, but whether [*the contractor*] had an unconstitutional policy and otherwise satisfies the *Monell* requirements. If it does, the County can be liable because [the contractor] stepped into the County's shoes with the County's permission." *Id.* at 1216 (emphasis added). Notably, the County Defendants do not mention *Estate of Walter* or discuss why the rationale explained there should not apply to the instant case. As it exhibits the most recent application of the non-delegable duty doctrine in this District, the Court finds Judge Martinez's analysis especially persuasive. Thus, the Court accepts Plaintiffs' argument that municipal liability under the non-delegable duty doctrine turns on whether the municipality delegated final decision-making authority to the third party contractor, and not whether the municipality was itself deliberately indifferent or had notice of any unconstitutional policies promulgated by the contractor.

While failing to acknowledge *Estate of Walter*, the County Defendants argue that some of the other cases relied on by Plaintiffs actually support their contention that a

showing of deliberate indifference by the county itself is required under the non-delegable duty doctrine. For example, the County Defendants argue that in *King*, the Seventh Circuit concluded that the county was not entitled to summary judgment regarding a healthcare contractor's conduct because "there was sufficient 'evidence to create a question of material fact whether the County was aware at the relevant time that [the healthcare contractor] had policies that violated inmates' constitutional rights." *Reply* [#39] at 5 (quoting *King*, 680 F.3d at 1021). However, the County Defendants take this language from *King* out of context. In *King*, the Seventh Circuit determined that the healthcare contractor's policy became that of the county after finding that the county had delegated final policymaking authority to the contractor regarding inmate medical care. 680 F.3d at 120-21. After this analysis, the Seventh Circuit determined that "[e]*ven if the County had not delegated final decision-making authority to* [*the contractor*], it was on notice that [the contractor's policies] were causing problems at the jail," which constituted "enough evidence to create a question of material fact whether the County was aware . . . that [the contractor] had policies that violated inmates' constitutional rights." *Id.* at 1021 (emphasis added). Thus, the Seventh Circuit's discussion of whether the county had notice of the unconstitutional policies of the contractor is separate from its finding of potential liability on the part of the county due to the county's delegation of final policymaking authority to the contractor.

The County Defendants raise similar contentions regarding Plaintiffs' reliance on *Trujillo* and *McGill*.[5] *See Reply* [#39] at 6-7, 7 n.3. Regarding *Trujillo*, the County

---

[5] The County Defendants also point to *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, a third Judge Jackson decision concerning municipal liability for jail medical care in which Judge

Defendants argue that the court "concluded plaintiff's claim against the City of Denver could go forward for the allegedly constitutionally deficient care provided by [the healthcare contractor] *because* 'plaintiff ha[d] plausibly alleged [sic] that the City was deliberately indifferent,' noting 'Denver knew or should have known that inadequate health care was being provided at the jail.'" *Id.* at 6 (quoting *Trujillo*, 2016 WL 5791208, at *14) (emphasis in original). However, Judge Jackson's discussion in *Trujillo* of the city's alleged deliberate indifference does not necessarily indicate that a finding of deliberate indifference on the part of the city is required to find indirect liability under the non-delegable duty doctrine. Nowhere in the opinion does Judge Jackson say that he reached his conclusion "because of" a finding that the city had been deliberately indifferent. Rather, the plaintiff in that case had specifically alleged that the city was deliberately indifferent, putting that allegation in dispute. That is not the case here, where Plaintiffs have clearly alleged only a claim for indirect liability, specifically distinguishing their theory of liability as one that does not require deliberate indifference on the part of the municipality. *See First Am. Compl.* [#49] at ¶ 163; *Response* [#33] at 11.

Moreover, Judge Jackson did not rely on a finding of municipal deliberate indifference in *McGill*. In *McGill*, Judge Jackson refused to grant summary judgment in favor of the municipality defendant where the plaintiff had plausibly alleged an unconstitutional policy, custom, or practice of a third-party healthcare contractor which could be "attributed to the [c]ounty through the non-delegable duty doctrine." 2014 WL

---

Jackson dismissed a § 1983 claim against a sheriff in his official capacity. *See Reply* [#39] at 7. However, the Court agrees with Plaintiffs' reading of the decision that Judge Jackson dismissed the claim against the sheriff based solely on a direct theory liability, never actually applying the non-delegable duty doctrine to the claim despite briefly referencing it. *See* 176 F. Supp. 3d at 1230-32.

5423271, at *7. The County Defendants point out that "there was no discussion regarding the required culpable mental state to establish the claim. Rather, the focus of the opinion was whether a policy of the contract medical provider could become a policy of the sheriff." *Reply* [#39] at 7, n.3. The County Defendants are correct. However, such an observation does not support the County Defendants' conclusion that "it is not clear at all that *McGill* supports the . . . theory Plaintiffs seek here to impute any CCS liability to the County regardless of whether the County itself was deliberately indifferent." *Id.* To the contrary, the Court finds that *McGill* precisely supports the theory of liability Plaintiffs seek here. In *McGill*, Judge Jackson looked to the municipality's delegation of policymaking authority to determine whether or not a policy of the healthcare contractor could be attributed to the county. Since Judge Jackson determined that the plaintiff had plausibly alleged an unconstitutional policy of the contractor which could be attributed to the county based on its delegation of policymaking authority to the contractor, he had no need to analyze the mental state of the municipality to determine if it had been deliberately indifferent. Such a finding would have been immaterial to the adjudication of the motion for summary judgment.

After reviewing the application of the non-delegable duty doctrine by courts in this District and outside the Tenth Circuit, the Court is persuaded that Plaintiffs' interpretation of the doctrine is correct. *See also, e.g.*, *Richards v. Piccinini*, No. 4:17-cv-00954, 2018 WL 4473588, at *7 (W.D. Mo. Sep. 18, 2018) ("[F]or purposes of surviving Defendant's motion for summary judgment, [Plaintiff] has sufficiently identified a policy [of the healthcare contractor] attributable to Jackson County, which he alleges caused his constitutional rights to be violated."); *Lemmons v. Cty. of Sonoma*, No. 16-cv-04553-WHO, 2018 WL 452108,

at *3 (N.D. Ca. Jan. 17, 2018) ("By ceding . . . final decision making to [the healthcare contractor] . . . [the contractor]'s policies . . . become the policies of" the county, which could be held liable "[i]f [the contractor]'s policies . . . resulted in unconstitutionally inadequate treatment."); *Scott v. Clarke*, 64 F. Supp. 3d 813, 821 (W.D. Va. Nov. 25, 2014) ("[W]here a State . . . cedes final decision-making authority . . . to a third-party contractor, the contractor's policies and decisions effectively become and constitute the policies and decisions of the State."); *Black v. Allegheny Cty.*, No. 2:13-cv-0179, 2014 WL 5493811, at *10 (W.D. Pa. Oct. 30, 2014) (Where county delegated final policymaking authority to healthcare contractor, "the policy of the [contractor] becomes the policy of the [county]. Therefore, liability is based on the [county]'s *own* policy, and not *respondeat superior*." (citing *Ancata*, 769 F.2d at 705) (emphasis in original)); *Cuyahoga Cty. v. State Auto. Mut. Ins. Co.*, No. 1:08-cv-01339, 2012 WL 5304083, at *5 (N.D. Ohio Oct. 25, 2012) ("By allowing [the healthcare contractor] to establish and implement policies and procedures for the non-delegable responsibility to provide adequate healthcare to inmates, the County, by law, assumed those policies and procedures as its own."); *Ford v. Suffolk County*, 154 F. Supp. 2d 131, 148-49 (D. Mass. 2001) (finding city liable for unconstitutional policies of county where city delegated custody of city's female arrestees to county) ("[T]he City had an affirmative obligation—as is present in the more standard models for municipal liability—to ensure that the policy of the [County] Jail officials did not lead to widespread violation of [City] arrestees' constitutional rights."); *Covington v. Westchester Cty. Jail*, No. 96 Civ. 7551 (SAS), 1998 WL 26190 (S.D.N.Y. Jan. 21, 1998) (denying county's motion to dismiss where county delegated inmate medical care to private healthcare contractor, determining that "[u]nder the [non-delegable duty] theory, the question is whether [the

healthcare contractor] exhibited deliberate indifference to the medical needs of [county jail] inmates[.]").

Thus, under the applicable caselaw, the question is not whether the County itself implemented an unconstitutional policy or acted with deliberate indifference in any capacity. Instead, the question is whether CCS promulgated an unconstitutional policy that was the moving force behind the deprivation of Mr. Lovern's constitutional rights, as required to impose liability under *Monell*. If Plaintiffs carry their burden to show that the *Monell* requirements are met, then the County Defendants may be held liable "because [CCS] stepped into the County's shoes with the County's permission." *Estate of Walter*, 323 F. Supp. 3d at 1216. Thus, "[CCS]'s policy becomes that of the County if the County [has] delegate[d] final decision-making authority to it." *King*, 680 F.3d at 1020.

Here, Plaintiffs have plausibly alleged that the County ceded final decision-making authority to CCS with respect to the provision of inmate medical care. *See, e.g.*, *First Am. Compl.* [#49] at ¶¶ 95, 163 ("CCS controls all aspects of health care available to inmates") ("Defendant CCS is a private corporation that contracts with Arapahoe County to provide medical care and health services to inmates at ACDF"). The Court notes that the County Defendants have made no argument regarding whether Plaintiffs' allegations with respect to CCS's policies plausibly conform to the requirements set forth in *Monell*; therefore, the Court draws all inferences with respect to those allegations in Plaintiff's favor at this time. Thus, pursuant to *Monell*, the Court may reasonably infer that CCS is an entity "whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694. Plaintiffs allege that CCS's constitutionally deficient policies, customs, practices, and training at ACDF may be fairly attributed to the County for purposes of liability under the non-

delegable duty doctrine. Therefore, because Plaintiffs have plausibly alleged a policy, practice, or custom of CCS which is attributable to Arapahoe County, the Court cannot dismiss the *Monell* claim against the County Defendants at this time.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#26] is **DENIED**.

Dated: July 3, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge